Rebecca ELLIOTT, Appellant–
Defendant,

v.

STERLING MANAGEMENT LTD.,
INC., Appellee–Plaintiff.

No. 71A03–0004–CV–133.

Court of Appeals of Indiana.

March 15, 2001.

Michael C. Kendall, Kendall Law Office, Indianapolis, IN, Attorney for Appellant.

Thomas H. Barnard, William D. Edwards, Ulmer & Berne LLP, Cleveland, OH, Byron L. Myers, Ryan McCabe Poor, Ice Miller, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge.

Rebecca Elliott appeals the grant of summary judgment in favor of Sterling Management Ltd., Inc. in her gender discrimination action. She raises three issues on appeal, which we consolidate and restate as whether Elliott demonstrated she was treated less favorably by Sterling than was a similarly situated employee, and whether she met Sterling's reasonable performance expectations.

We affirm.

### FACTS AND PROCEDURAL HISTORY[1]

Sterling develops, builds, and manages apartment communities at various locations in Indiana. It participates in a federally assisted program called the "Rural Development" program and receives federal money for property development and maintenance through the program. In order to receive the federal money, Sterling is obliged to comply with certain federal mandates. Sterling's contacts at the agency that administers the program are called "Rural Development Specialists." They inspect properties, monitor participant bookkeeping and files, approve participants' budgets and budget requests for capital improvements, and monitor ex-

---

1. Elliott's Counsel's Statement of Facts includes argument, which is inappropriate in that part of an appellate brief. We remind counsel that a Statement of the Facts should be a concise narrative of the facts stated in a light most favorable to the judgment and should not be argumentative. *County Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 290 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 219 (Ind.2000). The State-ment of the Facts Elliott's counsel offers us is, by contrast, a transparent attempt to discredit the judgment and is clearly not intended to be a vehicle for informing this court. For example, counsel offers as "facts" such legal conclusions and argumentative statements as: "The Plaintiff was hired by Sterling ... about ten (10) years before she was wrongfully fired" (Br. of Appellant at 4).

penses. The agency can initiate audits to ensure the participants are in compliance with its guidelines. Specifically, it may initiate an audit if it suspects a participant in the program is being afforded preferential treatment.

Sterling hired Elliott in March of 1988 as a site manager. She was promoted in 1995 to Regional Property Manager. In that capacity she managed eleven Sterling properties that were involved in the Rural Development Program. At the time Elliott was terminated, Dan Hughes was the Rural Development Specialist responsible for the properties Elliott managed. In 1997, rumors surfaced that Elliott and Hughes were engaged in a sexual relationship. After investigating the rumors, Larry Swank, the president of Sterling, became convinced they were true. The agency was Sterling's primary lender at that time, and Swank was concerned Elliott's rumored relationship with a Rural Development Specialist might trigger a costly agency audit and place Sterling's funding at risk. Swank terminated Elliott's employment after explaining to her his concern about an audit and indicating to her that even if the rumor was not true, Elliott had "exercised poor judgment in creating the appearance of an impropriety." (Br. of Appellee at 6.)

Elliott brought an action for gender discrimination, alleging a violation of Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. 2000(e) *et seq.* The trial court granted Sterling's motion for summary judgment.

## STANDARD OF REVIEW

■ In reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judg-

ment as a matter of law. Ind. Trial Rule 56(C); *Wisniewski v. Bennett* 716 N.E.2d 892, 894 (Ind.1999). Although the party who has not prevailed below has the burden of persuading the reviewing court that the grant of summary judgment was erroneous, we will carefully assess the trial court's decision to ensure that party was not improperly denied her day in court. *Id.* All facts and reasonable inferences drawn from those facts are construed in favor of the party that lost below. *Id.*

## DISCUSSION AND DECISION

■ Elliott concedes there was no direct evidence of Sterling's discriminatory intent before the trial court, but she appears to assert summary judgment was improper because she could make a *prima facie* showing of sex discrimination using circumstantial evidence pursuant to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that standard, once a plaintiff makes a *prima facie* showing of sex discrimination, the burden shifts to the employer to articulate a non-discriminatory justification for the asserted discrimination. If the employer can do so, the burden shifts back to the plaintiff to show either that the asserted justification is not credible or that the asserted justification is pretextual.[2]

■ To prove a *prima facie* case of sex discrimination under Title VII, a plaintiff must establish 1) that she is a member of a protected class (*i.e.,* female); 2) that she was meeting the employer's legitimate performance expectations; 3) that she suffered an adverse employment action; and 4) that a similarly situated male was treated more favorably. *Bragg v. Navistar Int'l Transp. Corp.,* 164 F.3d 373, 376 (7th Cir.1998). If the plaintiff does not establish any one of the four elements, her Title VII claim fails as a matter of law. *Black-*

---

**2.** Because we find Elliot has not established a *prima facie* case of sex discrimination, we do not address whether Sterling's asserted non-

discriminatory justification for her discharge was pretextual or incredible.

*well v. Cole Taylor Bank,* 152 F.3d 666, 672 (7th Cir.1998). Because Elliott did not satisfy the second and fourth elements, her claim fails as a matter of law, and summary judgment for Sterling was appropriate.

### 1. More Favorable Treatment of Similarly Situated Employee

To show that another employee is "similarly situated," a plaintiff must prove that all of the relevant aspects of her employment situation are "nearly identical" to those of the other employee she alleges was treated more favorably, *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994), and that the conduct of the other employee was "equally bad." *Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 931 (7th Cir.1993). Elliott concedes that because of the "rare circumstances" surrounding her claim, "the feasibility of the Plaintiff to mirror her circumstances to that of a similarly situated male are likely nil," (Br. of Appellant at 17), but she invites us to avoid accepting Sterling's "straight-jacket" approach to this element and instead to adopt her characterization of her burden as "identifying similarly situated males who was [sic] treated more favorably in similar circumstances." *Id.* at 18. This, she asserts, she has done.

We disagree that Elliott has shown that a similarly situated employee was treated more favorably. In *Pierce,* the male plaintiff charged he was disciplined for "off-color conduct" while a similarly situated female employee who had engaged in more egregious conduct was not disciplined. The *Pierce* court found the comparison employee offered by the plaintiff was not "similarly situated" where the plaintiff was a supervisor and the other employee was not; the plaintiff had responsibility over three offices, and the other employee was an "office administrator" with no supervisory control over any employee; the plaintiff evaluated employees, and the comparison employee did not; and the plaintiff was responsible for enforcement of the company's sexual harassment policy and the other employee was not. *Pierce,* 40 F.3d at 802.

Elliott offers as a "similarly situated employee" a male Regional Property Manager for Sterling who was, as Elliott was rumored to be, engaged in a "work-related intimate relationship." (Br. of Appellant at 20.) However, that employee was not "similarly situated" for Title VII purposes. The male property manager held the same job title as did Elliott and was also said to be engaged in an affair. However, the male employee's alleged affair was with a subordinate employee of his, while Elliott's was with an official of the government agency charged with oversight over some of Sterling's business operations. Because Elliott was discharged due to concerns an audit might be initiated by that agency if the agency suspected Sterling was receiving preferential treatment, we cannot say all of the relevant aspects of Elliott's employment situation are "nearly identical" to those of the male comparison employee. He was not, therefore, "similarly situated" to Elliott under the *Pierce* standard.

### 2. Meeting Employer's Legitimate Performance Expectations

Elliott has not demonstrated she was discharged despite meeting the employer's legitimate performance expectations. She notes that she was promoted during her ten-year employment with Sterling, never received an unfavorable evaluation, and never was threatened with suspension or termination for work-related issues. These facts, she asserts, "do not resemble unsatisfactory work performance." [3] (Br. of Appellant at 16.)

---

**3.** We note that Elliott's argument on this element is devoid of legal authority except for her reference to a decision relied on at trial by Sterling. Elliott refers to that decision only to assert that it is "misleading" and does

not support Sterling's argument. While Elliott asserts her performance was satisfactory, she offers us no legal standard for this element of the *McDonnell Douglas* test nor any explanation why the standard was met. Ac-

Appellate courts reviewing Title VII claims do not sit as a "super-personnel department that re-examines an entity's business decisions." *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 772 n. 13 (7th Cir.1994). The evaluation of an employee's job performance is not necessarily confined to an appraisal of her substantive work, but may include other considerations relevant to the maintenance of the work force. *Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir.1997).

Sterling terminated Elliott's employment after determining she was likely engaged in conduct that could jeopardize a significant source of business and which could subject Sterling to a costly audit. We decline to re-examine Sterling's determination that Elliott's conduct demonstrated poor judgment and gave rise to an appearance of impropriety that could have jeopardized Sterling's business. Elliott has failed to show that she met Sterling's legitimate performance expectations.

## CONCLUSION

Elliott has failed to establish that she met Sterling's legitimate performance expectations or that she was treated less favorably than a similarly situated employee. Summary judgment for Sterling was therefore proper, and we affirm.

Affirmed.

FRIEDLANDER, and BAILEY, JJ., concur.

---

cordingly, this argument is waived. Notwithstanding the waiver, we find Elliott failed to show she was meeting Sterling's legitimate performance expectations.