**Cathy A. THAYER and Mark Thayer, Appellants–Plaintiffs,**

**v.**

**Charles R. VAUGHAN and Vaughan and Vaughan, Appellees–Defendants.**

**No. 79A02–0303–CV–260.**

Court of Appeals of Indiana.

Jan. 13, 2004.

Transfer Denied April 23, 2004.

---

Andrew C. Charnstrom, Ann S. Grayson, Wooden & McLaughlin LLP, Indianapolis, IN, Attorneys for Appellants.

Robert M. Baker, III, Hoover Hull Baker & Heath, LLP, Indianapolis, IN, Attorney for Appellees.

## OPINION ON REHEARING

BAKER, Judge.

Appellants-plaintiffs Cathy and Mark Thayer ("Cathy", "Mark", or collectively, "Thayers") present a petition for rehearing regarding our affirmance of the summary judgment that was entered against them by the trial court. In our original opinion, this court determined that the Thayers failed to establish claims for sexual harassment or sex discrimination under 42 U.S.C. § 2000e et seq., and that the sexual harassment claim was time barred, thus negating their action against appellees-defendants Charles R. Vaughan and Vaughan and Vaughan for legal malpractice. We grant rehearing for the limited purpose of addressing three of the Thayers' issues [1]:

---

1. The rest of the Thayer's arguments amount to an assertion that we failed to correctly

(1) whether the proper factors were considered regarding the sex discrimination case; (2) whether this court properly relied on *Elliott v. Sterling Mgmt. Ltd., Inc.,* 744 N.E.2d 560 (Ind.Ct.App.2001); and (3) whether an "anchoring event" is required to show that sex discrimination occurred within the statutory period.

### I. Sex Discrimination Factors

■ The Thayers first contend that this court considered the incorrect factors in finding that the sex discrimination claim was without merit. Specifically, they argue that they were required to show that the two employees dealt with the same supervisor, were subject to the same standards and had engaged in similar conduct.

In *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612 (7th Cir.2000), the Seventh Circuit listed different factors to be considered for different types of sex discrimination cases. In reduction-in-force cases, "plaintiffs were required to show at a minimum that the retained or transferred [ ] employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Id.* at 618. These were the factors we applied in the original opinion. *See Thayer v. Vaughan,* 798 N.E.2d 249, 256 (Ind.Ct. App.2003). Although Cathy's resignation did result in a reduction of workforce for Lafayette Clinic, Inc. ("LCI"), this case is more analogous to a disciplinary case, "in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason." *Radue,* 219 F.3d at 617. When reviewing disciplinary cases,

> a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. This nor-

mally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

*Id.* at 617–18 (citations omitted).

Even when applying these factors, the same result obtains. Admittedly, Cathy and Dr. OrRico engaged in the same conduct. However, as stated in our original opinion, Dr. OrRico and Dr. El–Khalili shared the highest supervisory authority, while Cathy was subordinate to them. There is no evidence in the record of an employee handbook or any agreement that subjected Cathy and Dr. OrRico to the same standards. Moreover, the fact that Dr. OrRico was a professional employee and 50% owner of LCI, while Cathy was a staff employee with no ownership interest in LCI suggests that they are not subject to the same standards. The Thayers have not proved that Cathy and Dr. OrRico were similarly situated, and their sex discrimination claim is therefore without merit.

### II. Reliance on Elliott

The Thayers next contend that this court inappropriately relied on *Elliott v. Sterling Mgmt. Ltd., Inc.,* 744 N.E.2d 560, 563 (Ind.Ct.App.2001), in our original opinion. Specifically, they argue that the *Elliott* court misconstrued federal law.

In *Elliott,* the plaintiff was terminated because of a rumor that she had engaged in a sexual relationship with an official of the government agency charged with overseeing some of her employer's business

apply the standard of review in the original opinion. We deny the request for rehearing

as to these issues.

operations. Elliott brought a sex discrimination claim against her employer, who, in its defense, asserted that she was terminated because she had "exercised poor judgment in creating the appearance of an impropriety." *Elliott,* 744 N.E.2d at 563. The *Elliott* court found that the employer terminated Elliott's employment after determining that she "was likely engaged in conduct that could jeopardize a significant source of business and which could subject Sterling to a costly audit." *Id.* at 565. The court went on to state that, "Appellate courts reviewing Title VII claims do not sit as a 'super-personnel department that reexamines an entity's business decisions.' *Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 772 n. 13 (7th Cir.1994)."

In support of their contention that *Elliott* misconstrued federal law, the Thayers assert that the *Hiatt* court, cited in the *Elliott* opinion, rightfully refused to involve itself in the question of whether termination was a better punishment than a warning for the employee's "relatively minor work rule violation." Appellant's Br. p. 10. The "relatively minor" violation in *Hiatt* was that the employee falsified receipts when making a claim for reimbursement. They further assert that the *Elliott* court misconstrued federal law by "attempting to avoid the burden of determining whether a personnel decision violated federal anti-discrimination law." Appellant's Br. p. 10. The Thayers correctly state that *Hiatt* was not a discrimination case. However, *Hiatt* is not the only precedent that stands for the proposition that it is not the province of the courts to review an entity's business decisions.

In *Dale v. Chicago Tribune, Co.,* 797 F.2d 458 (7th Cir.1986), the Seventh Circuit reviewed a claim of age discrimination. Dale was a fifty-four-year-old employee of the Chicago Tribune who was told that he had to choose between accepting immediate termination with severance pay, or volunteering for early retirement upon his fifty-fifth birthday. Dale selected the latter. The *Dale* court stated:

> Dale has failed to state a prima facie case of age discrimination under the ADEA. Assuming, arguendo, that Dale could carry this initial burden, a rebuttable presumption of discrimination arises and the burden shifts to the Tribune to articulate a legitimate non-discriminatory reason for the discharge. This burden, however, is merely a burden of production that is not difficult to satisfy. In this case, the record demonstrates that the Tribune terminated Dale because it no longer viewed Dale as qualified to fulfill his obligations as Purchasing Manager. This explanation satisfies the Tribunes burden of production, and the presumption of discrimination is therefore rebutted.

*Dale,* 797 F.2d at 463–64 (citations omitted). In finding that Dale had failed to make out a prima facie case of age discrimination, the court went on to state, "This Court does not sit as a super-personnel department that reexamines an entity's business decisions." (citing *Huhn v. Koehring,* 718 F.2d 239, 244 (7th Cir.1983) (quoting *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981))).

Additionally, in *Powdertech, Inc. v. Joganic,* 776 N.E.2d 1251 (Ind.Ct.App.2002), a panel of this court reviewed a claim of discrimination based on a disability in contravention of the Americans With Disabilities Act. Joganic alleged that he was fired because of his disability, but Powdertech asserted that he was fired because of his "violent conduct." *Id.* at 1260. The *Powdertech* court found that this reason was not pretextual, citing the fact that appellate courts do "not sit as a super-personnel

department that reexamines an entity's business decisions[;] our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.*

In light of the precedent outlined above, we reject the Thayers' arguments that we improperly relied on *Elliott* in our original opinion. Dr. El–Khalili asserted that Cathy was asked to resign because he felt that the personal relationship between his partner and employee interfered with the functioning of the office, especially since Cathy, who worked for the corporation, was doing things for Dr. OrRico's personal practice that were beyond her duties. This is a legitimate, non-pretextual reason that is sufficient to defeat the Thayers' claim of sex discrimination.

### III. Anchor Event

The Thayers argue that their sexual harassment claim was not time barred because an "anchor event" is not required. Specifically, they contend that *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), has struck the concept of an "anchor event" from the law of employment discrimination.

The *Morgan* Court said:

A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. *Provided that an act contributing to the claim occurs within the filing period,* the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan,* 536 U.S. at 116, 122 S.Ct. 2061 (emphasis added). The Thayers read this language to abrogate the "anchor event" requirement. However, the underscored language clearly demonstrates that an act that contributes to the sexual harassment claim must occur at some point within 300 days before filing a claim with the Equal Employment Opportunity Commission, the relevant statutory filing period in Indiana[2] . This is the very definition of an "anchor event," and, thus, the Thayer's argument on this issue must fail.

While the Thayer's petition for rehearing is partially granted, our original opinion stands in all respects.[3]

BROOK, C.J., and SHARPNACK, J., concur.

---

**2.** 42 U.S.C. § 2000e–5(e).

**3.** The Thayers' December 5, 2003 petition for oral argument is denied.